UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-193-MOC

| | |
|---|---|
| NEW EXCELSIOR, INC., | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) **ORDER** |
| AMUT DOLCI BIELLONI SRL, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant Amut Dolci Bielloni Srl's Motion to Dismiss the Complaint for Improper Venue, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. (Doc. No. 17).

### I.  BACKGROUND

This action arises from the sale of a TELIA FSC 4008 CI FLEXOPRINTING MACHINE 8 COLOR MOD. 1500 (the "TELIA FSC 4008" or "TELIA") by Defendant, Amut Dolci Bielloni Srl ("Defendant"), an Italian company located in Biassono, Monza, Italy, to Plaintiff, New Excelsior, Inc. ("Plaintiff"), a North Carolina corporation, located in Brevard, North Carolina. The sale agreement was memorialized in an Order Confirmation ("OC" or "Contract") that was negotiated by the Parties over a two-to-three-month period. The TELIA is used to print labels and product identification codes on various plastic and nonporous wrappings, such as package goods manufactured and sold by Plaintiff's customers.

Defendant's motion concerns the general sales conditions ("GSCs") under which Defendant agreed to sell the TELIA to Plaintiff. The GSCs included an exclusive forum-selection clause requiring any litigation under the Contract to be filed in the competent Court in

1

Milan, Italy. Defendant contends that the GSCs were incorporated by reference in all iterations of the Detailed Sales Quote (the "DSQ") and the four OCs submitted to Plaintiff including the fourth OC, which Plaintiff accepted. Defendant contends that the specific terms of the GSCs (including the exclusive forum-selection clause) were detailed throughout the negotiations in a document titled "Abstract of Sale Conditions" (the "Abstract"). Defendant contends that the Abstract accompanied the DSQ as well as the four iterations of the OCs. In total, the Abstract and the incorporated GSCs were delivered to Plaintiff and its representatives five separate times. On January 7, 2016, the fourth OC was sent to Plaintiff after the Parties negotiated a final price of €955,000.00 for the TELIA. Defendant argues that, on January 22, 2016, Plaintiff assented to and accepted the fourth OC and the GSCs when it made a down payment of €286,500 for the TELIA pursuant to the payment terms of the fourth OC.

Defendant argues that, under the United Nations Convention for the International Sale of Goods (the "CISG"), which determines when the Contract was formed (and what terms were agreed to as of contact formation), once Plaintiff made its initial payment of €286,500 toward the purchase price of the TELIA, it assented to and accepted the terms of the fourth OC. According to Defendant, because the agreed-to contract included a forum selection clause requiring any suit to be brought in Italy, this action must be dismissed for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure.[1]

Plaintiff argues, on the other hand, that the contract did not go into effect until both parties signed the contract on March 21, 2016. Plaintiff contends that, on this date, when it returned the contract documents to Defendant, Plaintiff had specifically deleted the forum selection clause from

---

[1] The parties agree that if the forum selection clause was part of the contract, it covers the breach of contract claim raised here.

the contract. Plaintiff argues that Defendant's communication with Plaintiff on February 25, 2016, demonstrates that not believe a contract was formed, and negotiations continued, resulting in a contract, signed by both parties on March 21, 2016, that did not include the proposed venue clause.

Plaintiff argues, alternatively, that even if a contract was formed before March 21, 2016, the relationship was modified when both parties countersigned the contract on March 21, 2016, with the omitted venue selection clause.

## II. STANDARD OF REVIEW

"[A] motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." Turfworthy, LLC v. Dr. Karl Wetekam & Co. KG, 26 F. Supp. 3d 496, 502 (M.D.N.C. 2014) (citations omitted). "When an objection to venue has been raised under Rule 12(b)(3), the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action." Id. at 502 (citing Plant Genetic Sys. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996)). "In considering a motion to dismiss under Rule 12(b)(3) for improper venue, 'the court is permitted to consider evidence outside the pleadings. A plaintiff is obliged, however, to make only a prima facie showing of proper venue in order to survive a motion to dismiss. In assessing whether there has been a prima facie venue showing, we view the facts in the light most favorable to the plaintiff.'" Id.

"The validity of a forum-selection clause raised by a Rule 12(b)(3) challenge in a diversity action is determined according to federal law." Turfworthy, 26 F. Supp. 3d at 502 (citing Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 650 (4th Cir. 2010)). "If the Court accepts Defendant's argument that venue is improper based on a forum selection clause, then [the] case must be dismissed, as the Court lacks jurisdiction to transfer a case to a court of a

3

foreign nation." Id. at 503 (citing Allen v. Lloyd's of London, 94 F.3d 923, 926, 932 (4th Cir. 1996) (dismissing lawsuit after holding that a forum-selection clause designating the United Kingdom as the proper forum was both mandatory and enforceable)).

Here, if the Court determines that the forum selection clause was indeed part of the parties' contract, then it is "presumptively valid and should be enforced unless the opposing party clearly shows that enforcement is unreasonable under the circumstances." Sharpe v. Ally Fin., Inc., No. 3:17CV189-GCM, 2017 WL 5078900, at *3 (W.D.N.C. Nov. 3, 2017) (quoting Allen, 94 F.3d at 928; Allied Dynamics Corp. v. Kennametal, Inc., No. 12-cv-5904, 2014 WL 3845244, at **5, 13 (E.D.N.Y. Aug. 5, 2014) (granting 12(b)(3) motion and holding that a forum selection clause incorporated in the Order Confirmation was mandatory and enforceable and that the case had to be brought in Milan, Italy). "A forum selection clause can bind the parties even where the agreement in question is a form consumer contract that is not subject to negotiation." Id. at *5 (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 589–95 (1991)). "For a forum selection clause to be deemed mandatory, jurisdiction and venue must be specified with mandatory and exclusive language." John Boutari & Son, Wines and Spirits, S.A. v. Attiki Imps. & Distribs., Inc., 22 F.3d 51, 53 (2d Cir. 1994). Further, "a valid forum-selection clause pointing to a foreign forum should be 'given controlling weight in all but the most exceptional cases.'" Pro Step Marketing, Inc. v. Real Estate Webmasters, Inc., No. 5:16cv72-RLV-DSC, 2017 WL 3595489, at *2 (W.D.N.C. Aug. 21, 2017) (citing Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex., 134 S. Ct. 568, 581 (2013)).

### III. DISCUSSION

The parties in this case are all located in contracting states of the United Nations Convention on Contracts for the International Sale of Goods ("CISG"). Therefore, the CISG governs this

4

Case 1:21-cv-00193-MOC-WCM   Document 35   Filed 11/21/22   Page 4 of 10

dispute. CISG, art. 1(1)(a), 15 U.S.C. App., 52 Fed. Reg. 6262 (March 2, 1987) ("This Convention applies to contracts of sale of goods between parties whose places of business are in different States when the States are Contracting States."). Furthermore, the CISG governs the formation of this contract of sale. CISG, art. 4; see also id., art. 100(1) ("This Convention applies to the formation of a contract only when the proposal for concluding the contract is made on or after the date when the Convention enters into force in respect of the Contracting States."). Therefore, the CISG must be applied, using the standard for a Rule 12(b)(3) motion to dismiss for improper venue, to determine if the parties formed a contract that included the forum-selection clause.

Thus, the CISG governs whether and when the forum selection clause at issue became a part of the parties' agreement. The answer to this question turns on when the contract was formed— that is, when the parties became bound by their agreement. Under the CISG, "[a] contract of sale need not be concluded in or evidenced by writing and is not subject to any other requirement as to form." CISG art. 11. A proposal is an offer if it is "sufficiently definite and indicates the intention of the offeror to be bound in case of acceptance." CISG art. 14(1). Article 14(1) further states that "[a] proposal is sufficiently definite if it indicates the goods and expressly or implicitly fixes or makes provisions for determining the quantity and the price." Thus, a sales quote is sufficiently definite to constitute an offer under the CISG where it states the cost of building a product, fixes or makes provisions for determining the quantity of a product, states a timeline for production, and provides details about the product to be manufactured. See Chateau des Charmes Wines Ltd. v. Sabate USA Inc., 328 F.3d 528, 531 (9th Cir. 2003) (finding that a binding contract existed when parties sufficiently and orally agreed as to goods, quantity, and price); Eason Automation Sys., Inc. v. Thyssenkrupp Fabco, Corp., No. 06–14553, 2008 WL

1901236, at *2 (E.D. Mich. Apr. 25, 2008) (concluding that quote stating cost of building machine, date of delivery, timeline for production, and details about product to be manufactured was "sufficiently definite to constitute an offer under the CISG," and that "the contract was formed upon verbal assent of Defendant which indicated that Plaintiff should begin work on the machine").

In situations where a forum selection clause was imposed before a contract formed under the CISG (i.e., as a part of an offer or counteroffer that later was accepted), courts have deemed the forum selection clause to be a part of the parties' consented to agreement. Allied Dynamics Corp. v. Kennametal, Inc., 965 F. Supp. 2d 276, 299 (E.D.N.Y. 2013); Solae, LLC v. Hershey Can., Inc., 557 F. Supp. 2d 452, 458 (D. Del. 2008). Under the CISG, however, an acceptance with different standard conditions is not actually an acceptance, but rather is a rejection and counteroffer. VLM Food Trading Int'l, Inc. v. Ill. Trading Co., 811 F.3d 247, 251 (7th Cir. 2016); Roser Techs., Inc. v. Carl Schreiber GmbH, No. 11-302, 2013 WL 4852314, at *5 (W.D. Pa. Sept. 10, 2013) ("Under the CISG, an acceptance with different standard conditions is not actually an acceptance, but rather is a rejection and counteroffer."); Norfolk S. Ry. Co. v. Power Source Supply, Inc., No. 06-58, 2008 WL 2884102, at **6–7 (W.D. Pa. July 25, 2008) (finding bill of sale sent after the purchase order materially altered the terms of the offer and thus constituted a rejection of the offer and counteroffer under Article 19 of the Treaty).

Here, Defendant contends that the forum selection clause was included in all iterations of the contract during the negotiations, and the contract, including the forum selection clause, went into effect on January 22, 2016, when Plaintiff made the down payment of €286,500 for the TELIA pursuant to the payment terms of the fourth OC. Plaintiff contends, on the other hand, that the contract did not go into effect until March 21, 2016, when the parties signed the contract,

and at that point the Italian venue clause had been omitted. Plaintiff contends, alternatively, that even if the parties had agreed to an enforceable contract before the March 2016 date, the parties modified the terms so that the venue provision was omitted from the contract.

The Court finds that the parties' course of dealings before they signed the contract on March 21, 2016, indicates that the contract did not go into effect until that date, and the terms on that date did not include the Italian venue clause. Specifically, Plaintiff has presented evidence to show that Defendant stated on February 25, 2016, that it would not ship the machine in question until the final document was signed. On that date, Defendant's employee Matteo Spinola informed Plaintiff that to proceed with the machine's purchase, Defendant "ha[d] to receive" a written, signed document to have a deal. (Moorcroft Aff. ¶ 10, Ex. 3). In other words, the parties had not agreed on a documented set of terms for the deal, if any, and Defendant understandably required a signed document to proceed. (Id.). Plaintiff asserts that Mr. Spinola's email made clear that the machine would not be shipped until a final document was executed by the parties. (Id.).

Plaintiff asserts that it made two payments, which could be classified as down payments, but Plaintiff did not make a final acceptance payment until long after February 2016, as Defendant concedes. (See Doc. No. 18, p. 16 noting that the second payment was 65% of the machine's cost). Plaintiff further asserts that even Defendant's exhibits show that on February 25 and 26, the parties were still talking about important unresolved details. (E.g., Doc. No. 18-8, email from Jim Kelley at New Excelsior, "Can I please get pictures of the utility connection points, and the actual measurements of each for the cether (sic) point of the CI?").

The parties corresponded on March 21, 2016, in an email exchange. (Moorcroft Aff., ¶¶ 4–5, Exs. 1 and 2). Plaintiff's employee Dave Moorcroft sent a document back to Defendant. (Id.

7

¶ 5, Ex. 1). Moorcroft signed every page under "The Buyer" except the last page of the document he sent back, which he signed under "For acceptance." (Id.). Defendant's employee Spinola countersigned that document, returned on March 21 to Moorcroft by Defendant's Nicholas Dimopolous. (Id., Ex. 2). The document, signed by both parties, did not include the Italian venue clause. (Id., Exs. 1 and 2, compare to Doc. Nos. 18-3, 18-4, not signed by the parties, containing the clause).

Plaintiff has also presented evidence showing that Defendant's representative Dimopolous stated on March 21:

> Attached is the countersigned Order Confirmation regarding the Bielloni Telia press. Tomorrow, we are initiating dismantling and crating and in a few days we will advise regarding shipment date from North Italian Port.

(Id., ¶ 5, Ex. 2). In other words, on March 21 Defendant received the document it demanded, minus the Italian venue clause. Upon receipt, Defendant countersign every page, without bringing up the omitted Italian venue clause. (Id. ¶ 8). Then, and only then, did Defendant dismantle and crate the machine and begin the process of shipping it. The machine was delivered to North Carolina around May or June 2016. (See id. ¶ 9).

Here, it is undisputed that when both parties signed the contract on March 21, 2016, the version that Plaintiff sent back did not contain the forum selection clause at issue. Indeed, Plaintiff intentionally had deleted the forum selection clause. Either Defendant did not notice the deleted term, or noticed it but did not say anything to Plaintiff about it. Regardless, the forum selection clause was not included in the final contract that both parties signed on March 21. Therefore, the forum selection clause at issue is not enforceable against Plaintiff.

The Court further agrees with Plaintiff that, even if the parties had agreed to an enforceable contract before the March date, the parties modified the terms so that the venue provision was

8

omitted from the contract. As Plaintiff notes, courts interpreting the CISG have found that when parties swap documents with offers, counteroffers, etc., a "battle of the forms" exists under CISG similar to the Uniform Commercial Code, although the CISG requires less formality in both formation and modification of contracts. See generally Zodiac Seats US, LLC v. Synergy Aerospace Corp., 4:17-cv-410, 2020 WL 1703572, at **12–13 (E.D. Tex. April 8, 2020). Modification can occur by agreement without additional consideration. See id.

Moreover, terms related to the extent of a party's liability to the other party or the settlement of disputes materially alters a contract under CISG, Art. 19(d). The CISG does not state whether a venue clause satisfies this materiality requirement. See Belcher-Robinson, L.L.C. v. Linamar Corp., 699 F. Supp. 2d 1329, 1336–37 (M.D. Ala. 2010). Regardless of whether the forum selection clause is considered material under the CISG, the result is the same. That is, if the forum selection clause is not material, the parties could modify any nonmaterial term after contract formation through a traditional battle of the forms. Here, in March 2016, both parties modified a nonmaterial term by signing a document that did not contain the forum selection clause. See Belcher-Robinson, 699 F. Supp. 2d at 1336–37. Even assuming that venue selection clause is material, the parties under the CISG may modify the contract to eliminate the venue selection clause contained in earlier quotes or offers. Thus, the Court finds, alternatively, that even if a venue clause was contained in earlier offers and a contract was formed before March 21, 2016, the parties modified the contract on March 21, 2016, to omit the venue clause.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that the contract at issue here did not include the forum selection clause requiring the parties to litigate this breach of contract action in Italy. Therefore, the Court will deny Defendant's motion to dismiss.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss for Improper Venue, (Doc. No. 17), is **DENIED**.

Signed: November 18, 2022

Max O. Cogburn Jr
United States District Judge